Joseph G. **MRAZ**

v.

**COUNTY OF LEHIGH, David K. Bausch and John J. Kachmar, Jr.**

Civ. A. Nos. 92–CV–6534, 93–CV–2710.

United States District Court,
E.D. Pennsylvania.

Aug. 31, 1994.

Richard J. Orloski, Orloski & Hinga, Allentown, PA, for plaintiff.

Richard F. Stevens, Dina M. Branco, Stevens & Johnson, Allentown, PA, for defendants.

## MEMORANDUM AND ORDER

JOYNER, District Judge.

This is an action filed by Plaintiff, Joseph G. Mraz, for alleged violations by his former employer, Lehigh County, and David K. Bausch and John J. Kachmar, Jr., employees of Lehigh County. Plaintiff alleges violations of the United States and Pennsylvania Constitutions, the Federal Civil Rights Act, the Pennsylvania Whistleblower Law, and the federal Age Discrimination in Employment Act. Presently before this Court is Defendants' Motion for Summary Judgment filed pursuant to Rule 56 of the Federal Rules of Civil Procedure.

## STANDARD

In considering a motion for summary judgment, the court must consider whether the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show there is no genuine issue of material fact, and whether the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The court must determine whether the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty*

*Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

In making this determination, all of the facts must be viewed in the light most favorable to the non-moving party and all reasonable inferences must be drawn in favor of the non-moving party. *Anderson,* 477 U.S. at 256, 106 S.Ct. at 2514. Once the moving party has met the initial burden of demonstrating the absence of a genuine issue of material fact, the non-moving party must establish the existence of each element of its case. *J.F. Feeser, Inc. v. Serv-A-Portion, Inc.,* 909 F.2d 1524, 1531 (3d Cir.1990), *cert. denied,* 499 U.S. 921, 111 S.Ct. 1313, 113 L.Ed.2d 246 (1991) (*citing Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986)).

Pleadings have closed in this action. Defendants now move for summary judgment alleging that there exist no genuine issues of material fact regarding Plaintiff's claims.

### FACTS

Taking the facts alleged by Plaintiff as true, Plaintiff was hired in January of 1990 by Lehigh County to work as a Director/Administrator of Cedarbrook Nursing Home, a county home. Plaintiff was appointed by defendant David K. Bausch, who at that time was Lehigh County Executive.

During the course of his employment, Plaintiff became aware of a mechanism used at the Gracedale Nursing Home in Northampton County that he believed would save Lehigh County a half-million dollars per year. The measure involved taking away the free meals provided to the nursing home employees in exchange for increased salaries. Plaintiff wanted to implement this cost-savings measure at Cedarbrook.

In his efforts, Plaintiff contacted several financial consultants and asked them to forward information relative to this cost-savings measure to defendants Bausch and Jeffrey Skinner, Chair of the Lehigh County Commissioners. Skinner requested further information from Plaintiff regarding financial matters of the nursing home. According to protocol, Plaintiff submitted his reply to defendant John J. Kachmar, Jr., who was at

that time Lehigh County Administrator, in order to get approval to release the financial information. Kachmar did not approve a release and later informed Plaintiff that information regarding the Gracedale measure should not be given to the Commissioners. When Commissioner Skinner requested the information again, Plaintiff notified Kachmar of the second request. Kachmar indicated that he would decide whether or not to respond to Skinner's inquiries and that Plaintiff should not reply.

According to Plaintiff, defendants Bausch and Kachmar did not want to inform the Board of Commissioners about the half million dollar cost-savings measure for the purpose of politically embarrassing the Commissioners. Defendants Bausch and Kachmar allegedly had a political agenda to provide special treatment to Edward Newett, chief financial officer of Cedarbrook, under contract, and Diversified Health Services for whom Newett worked. Accordingly, Plaintiff was terminated on or about October 29, 1992 because he brought the cost-saving measure into issue and thereby gave the Board reason to believe Newett and Diversified Health Services were not properly performing their jobs.

Defendants made public statements regarding Plaintiff's termination, claiming that he was terminated because of a clash of management styles. Defendant Bausch told Plaintiff that he was discharged because he leaked information to the Board of Commissioners. Plaintiff contends that he was terminated just prior to the Lehigh County Board of Commissioners' open budget hearings because Defendants did not want Plaintiff to suggest his proposal at the hearings. Plaintiff further contends that he was discharged because of his age, fifty-five, and replaced by a much younger worker who would not oppose Defendants.

### DISCUSSION

#### A. Wrongful Termination Claim

Count One of Plaintiff's Amended Complaint apparently is a wrongful termination claim alleging that Plaintiff was terminated in retaliation for exercising his First Amend-

ment right to speak freely. Although not express in the Amended Complaint, it appears from his Brief in Opposition to the Motion for Summary Judgment (Plaintiff's Brief) that this claim is brought under the Federal Civil Rights Act, 42 U.S.C.A. § 1983 (West 1981) (§ 1983). Plaintiff asserts that Defendants instructed him not to speak to Commissioner Skiller and that when he did communicate with the Commissioner, he was fired.

Defendants argue that Plaintiff's conduct was not protected because he was never instructed not to speak, that the cost-saving measure is not a matter of public concern, and that Plaintiff was discharged for non-retaliatory reasons.

■ To show retaliation, Plaintiff must show that he was engaged in protected activity. *Centrella v. Barth,* 633 F.Supp. 1016, 1021 (E.D.Pa.1986). Courts determine whether activity is protected by weighing "the interests of the employee as a citizen, commenting upon matters of public concern" against the interest the government has in the efficiency of the public services it performs. *Id.; Pickering v. Board of Educ.,* 391 U.S. 563, 568, 88 S.Ct. 1731, 1734, 20 L.Ed.2d 811 (1968). If the activity is protected, courts evaluate whether exercise of the right was a motivating factor behind the decision to discharge. *Centrella,* 633 F.Supp. at 1021.

■ Whether something is a "matter of public concern" depends on the "content, form and context of a given statement, as revealed by the whole record." *Connick v. Myers,* 461 U.S. 138, 146, 103 S.Ct. 1684, 1690, 75 L.Ed.2d 708 (1983). A matter is one of public concern if it relates to "broad social or policy issues" or the "way in which a government office [serves] the public." *Sanguigni v. Pittsburgh Bd. of Pub. Educ.,* 968 F.2d 393, 398 (3d Cir.1992). This includes allegations of inefficiency, waste and even fraud committed by county and state governments. *Czurlanis v. Albanese,* 721 F.2d 98 (3d Cir.1983). It is important whether the communications were made to someone in a position to address and resolve the assertions. *Sanguigni,* 968 F.2d at 398.

■ Here, Plaintiff asserts that his communication related to the Defendants' knowing failure to act on a proposal that would save Lehigh County a half-million dollars per year. Mraz Affidavit ¶ 24. This alleged communication concerns a matter of public concern; saving money for the taxpayers of Lehigh County and revealing waste. In addition, Plaintiff asserts that the communications were made to a person who could resolve the matter, and who had requested the information; Commissioner Skinner, Chair of the Lehigh County Commissioners. Mraz Affidavit ¶ 17.

■ Because Plaintiff avers facts sufficient to support his claim that he was commenting upon a matter of public concern, it is necessary to weigh his interest in commenting against the interest of Lehigh County in his silence. States have an interest in regulating the speech of their employees to promote the efficiency of their public services and to ensure that a government speaks with one voice. *Sanguigni,* 968 F.2d at 397.

Defendant argues, without support or explanation, that "[t]here can be no doubt that [Plaintiff's] speech ... was of such a nature as to totally undermine the reliable operation of all levels of the county government." Defendants' Memorandum of Law In Support of Their Motion for Summary Judgment at 14 (Defendants' Brief).

Taking Plaintiff's allegations in the light most favorable to him, it appears that the importance of the speech (potentially saving a half-million dollars per year) outweighed any government interest in preventing the speech, and that Plaintiff communicated his information without disrupting the County government. Mraz Affidavit ¶¶ 16, 17, 44.

To show retaliation, Plaintiff must also show that the protected activity in which he engaged was a substantial reason behind the decision to discharge. Plaintiff makes this showing in his complaint and in his affidavit when he asserts that Defendants fired him in order to prevent him raising the cost-saving measure at a public hearing. *See* Amended Complaint ¶ 23; Mraz Affidavit ¶¶ 45–48.

Plaintiff has averred facts sufficient to show that he was engaged in protected activi-

ty when he notified the proper· officials of potential waste in the Lehigh County budget. Accordingly, Defendants' Motion for Summary Judgment on this claim is denied.·

### B. Pennsylvania Whistleblowing Claim

■ Plaintiff asserts that his termination violates the Pennsylvania Whistleblower Law, 43 Pa.Stat.Ann. §§ 1421–1428 (1991) (the Act). The Act protects public employees from retaliation for making good faith reports about wrongdoing or waste to an employer or appropriate authority.

The Act defines "waste" as "conduct or omissions which result in substantial abuse, misuse, destruction or loss· of funds or resources belonging to or deriving from Commonwealth or political subdivision sources." 43 Pa.Stat.Ann. § 1422.

Defendants argue that Plaintiff's communications are not covered by the Act because they do not concern waste or wrongdoing. Plaintiff's Affidavit, in contrast, avers that a half-million dollars were at stake (Mraz Affidavit ¶ 16) and that this money was wasted due to conduct and omissions of Defendants in an effort to embarrass the County Commission. *Id.* ¶ 26. Plaintiff further avers that he was fired in retaliation for informing an appropriate authority of the waste. *Id.* ¶¶ 44–49; *Freeman v. McKellar*, 795 F.Supp. 733, 741 (E.D.Pa.1992).

This disagreement raises a question of material fact appropriate for the fact-finder to resolve. Accordingly, Defendants' Motion for Summary Judgment on this claim is· denied.

### C. § 1983 Claim

■ Plaintiff's third Count raises a claim under § 1983. Plaintiff alleges that Defendants, acting under color of law, violated his Constitutional rights to free speech and to earn a living. He asserts that the violations occurred as a result of Defendants' allegedly false and defamatory statements concerning his professional competence and personal honesty.

Defendants argue that § 1983 is not implicated. They argue that Plaintiff has not shown any defamation, nor shown a policy or custom of the government that violated § 1983.[1]

Both Plaintiff and Defendants have provided the Court with a copy of a newspaper article that cites defendant Kachmar as stating that defendant Bausch thought that Plaintiff's management style was ineffective. This could carry a defamatory meaning. *Petula v. Mellody*, 138 Pa.Commw. 411, 588 A.2d 103 (1991). However, Plaintiff has not averred any facts that indicate any connection between the allegedly defamatory statements· and any violation of his rights to free speech or right to earn a living. *Clark v. Township of Falls*, 890 F.2d 611, 619 (3d Cir.1989); *Paul v. Davis*, 424 U.S. 693, 708, 96 S.Ct. 1155, 1164, 47 L.Ed.2d 405 (1976).

Accordingly, Defendants' Motion for Summary Judgment on this claim is granted.

### D. Privacy Claim

Plaintiff's Fourth Count alleges that Defendants violated Plaintiff's Fourteenth Amendment right to privacy when they released confidential information about Plaintiff's discharge to "cover up the retaliatory conduct by Defendants." Amended Complaint ¶¶ 44, 45.

Defendants move for summary judgment on this claim on the grounds that they did not release confidential information and that any information that they may have released is not protected by the Fourteenth Amendment.

■ The right to privacy guaranteed by the Fourteenth Amendment protects some confidential information, including medical reports (*United States v. Westinghouse Elec. Corp.*, 638 F.2d 570 (3d Cir.1980)) and personal papers. *Nixon v. Administrator of Gen. Servs.*, 433 U.S. 425, 475–558, 97 S.Ct. 2777, 2806–48, 53 L.Ed.2d 867 (1977); *Scheetz v. The Morning Call, Inc.*, 946 F.2d 202, 206 (3d Cir.1991), *cert. denied,* —— U.S.

1. Defendants also request summary judgment on the ground that they are immune from suit. We will not decide this argument because summary judgment on this claim is granted on substantive grounds.

——, 112 S.Ct. 1171, 117 L.Ed.2d 417 (1992). "The right to privacy extends to ... 'the individual interest in avoiding disclosure of personal matters....'" *Id.* (quoting *Whalen v. Roe,* 429 U.S. 589, 97 S.Ct. 869, 51 L.Ed.2d 64 (1977)). The right to privacy does not extend to reputation, however. *Id.*

 A matter that is confidential can lose some or all of its protection if it is placed in the public record or if there is no reasonable expectation in its privacy. *Cox Broadcasting Corp. v. Cohn,* 420 U.S. 469, 494–95, 95 S.Ct. 1029, 1045–46, 43 L.Ed.2d 328 (1975). Publication by the state of an official act does not constitute a violation of the right to privacy. *Paul v. Davis,* 424 U.S. 693, 713, 96 S.Ct. 1155, 1166, 47 L.Ed.2d 405 (1976).

 Plaintiff's Brief does not elaborate on the reasoning or facts behind Count Four. However, Plaintiff avers in his affidavit that Defendants released information about his termination to the press. Defendants allegedly explained the termination as the result of a clash of management styles and allegedly told various people that Plaintiff was terminated for exercising his free speech rights. Mraz Affidavit ¶¶ 47, 48.

Even taking Plaintiff's facts as true, it is impossible to find that the release of the fact of Plaintiff's termination violated his right to privacy, because Defendants merely reported an official act of Lehigh County. *See Paul,* 424 U.S. at 713, 96 S.Ct. at 1166.

Accordingly, Defendants' Motion for Summary Judgment on this claim will be granted.

### E. ADEA Claim

Plaintiff alleges that Defendants violated the Age Discrimination in Employment Act, 29 U.S.C.A. §§ 621–634 (West 1985) (the ADEA) by firing him solely because of his age and with the intent and purpose of replacing him with a younger person.

 The ADEA is intended to "promote employment of older persons" and prohibits firing any person on account of their age. 29 U.S.C.A. §§ 621, 623. To state a prima facie case under the ADEA, Plaintiff must show

that age was a determinative, but not necessarily sole, factor in the decision to discharge. *Billet v. Cigna Corp.,* 940 F.2d 812, 816 (3d Cir.1991). This can be shown circumstantially, by showing that (1) Plaintiff is within a protected class, (2) that he was qualified for the position, (3) that he was dismissed despite his qualifications and (4) that he was replaced by someone sufficiently younger to permit an inference of age discrimination. *Gray v. York Newspapers, Inc.,* 957 F.2d 1070, 1078 (3d Cir.1992).[2]

 Defendant moves for summary judgment on the ground that Plaintiff is not an "employee" within the protection of the ADEA. The ADEA defines an employee as any individual employed by an employer except for elected officials, or personal staff members of elected officials, or appointees with policy-making powers. 29 U.S.C.A. § 630(f).

Plaintiff denies being on the personal staff of an elected official or having policy-making powers. Mraz Affidavit ¶¶ 51–59. Plaintiff's employment status is an issue of material fact that is proper for a fact-finder to determine.

Plaintiff has also alleged sufficient facts to make a prima facie case under the ADEA. He avers that he is within a protected class, because he was fifty-five years old when fired; that he was qualified for the position given his previous experience and performance on the job; and that he was replaced by a forty year old person, sufficiently younger to permit an inference of age discrimination. Mraz Affidavit ¶¶ 1, 4–5, 15, 47, 60–62.

Because Plaintiff raises a genuine issue of material fact on the ADEA claim, Defendants' Motion for Summary Judgment on this claim is denied.

### CONCLUSION

In sum, there exist genuine issues of material fact as to whether Defendants wrongfully terminated Plaintiff in retaliation for protected activity, whether Defendants violated Pennsylvania's Whistleblower Law, and

---

2. In addition, Plaintiff must show that he has complied with administrative prerequisites to fil-

ing. Plaintiff avers that he has complied with these requirements. Mraz Affidavit at ¶ 2.

whether Defendants violated the federal Age Discrimination in Employment Act. However, Plaintiff has not raised an issue of material fact on his privacy and civil rights claims. Accordingly, Defendants are entitled to summary judgment on those claims.