**Ashoff v. Gobel**

C.P. of Allegheny County, no. GD 94-6527.

*Jennifer M. Kirschler* and *Charles W. Kenrick,* for plaintiffs.

*Dennis G. Fritsch,* for defendants George S. Gobel and Gobel & Beisler.

*Gregory T. Weis,* for defendant George S. Gobel, individually.

*David Rosenberg,* for defendant Dino DiFelice.

*William W. Guthrie,* for defendant George Levkulich.

*Stephen J. Summers,* for defendants Arlene Schinosi and Angelo Schinosi.

*Patrick L. Mechas,* for defendants Donald C. Kerklo and Lavina F. Kerklo.

*John M. Giunta,* for defendant William Behare.

*Lisa Ondick,* for defendant Richard Tyszkiewicz.

ORIE MELVIN, *J.,* March 14, 1995—The plaintiff, Marilyn Cooper Ashoff, an individual, Lori Galiyas, an individual, and Falco A. Muscante, Esq., an individual, filed an action alleging defamation, invasion of privacy, intentional interference with business relationships, injurious falsehood, civil conspiracy, slan-

der and intentional infliction of emotional distress, for a total of 14 counts against the seven defendants. The defendants, George S. Gobel, Esq., an individual, and d/b/a Gobel and Beisler; Dino DiFelice, an individual; George Levkulich, an individual; Arlene Schinosi, and Angelo Schinosi, her husband, individuals; Donald C. Kerklo and Lavina F. Kerklo, his wife, individuals; William Behare, Esq., an individual; and Richard Tyszkiewicz, an individual; each filed preliminary objections to the portions of the complaint pertaining to them. By order dated August 18, 1994, the preliminary objections of each defendant were sustained, and the complaint as to all defendants was dismissed. The plaintiffs appeal this order to the Superior Court.

The facts here can be briefly summarized. During the 1993 political campaign for the directorships of the South Allegheny School Board, the plaintiffs, Ashoff and Galiyas, incumbent directors at the time along with the current solicitor, allege that the defendants, candidates for directorships, committed various torts by publishing untrue, malicious and damaging statements about the plaintiffs in furtherance of their political campaigns. At issue is whether the plaintiffs have failed to state a cause of action. This court will address each cause of action raised in the 14 count complaint.

In Counts 1, 2 and 3, it is alleged that the defendants defamed Ashoff and Galiyas, Ashoff, and Muscante, respectively, each a separate count. This court found nothing in the plaintiffs' exhibits capable of defamatory meaning. The alleged defamatory statements dealt with raising taxes, school finances, political contributions to plaintiffs' 1989 campaign, school affairs and teacher salaries. Each statement merely complains about how the plaintiffs ran the school district.

Pennsylvania follows the definition of defamation incorporated in the Restatement of Torts §559 (1938), which provides:

"A communication is defamatory if it tends so to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him." *Pierce v. Capital Cities Communication Inc.,* 576 F.2d 495 (1978).

Whether or not language can reasonably be construed as defamatory is a question of law to be determined by a court. *Id.*

The Superior Court in *Rutt v. Bethlehem's Globe Publishing Co.,* 335 Pa. Super. 163, 484 A.2d 72 (1984) stated that "[i]n determining whether the challenged communication is defamatory, the court must decide whether the communication complained of can fairly and reasonably be construed to have the libelous meaning ascribed to it by the complaining party. ... In making this determination upon the meaning of the [alleged defamatory communication], it must be construed as a whole, ... and each word must be read in the context of all the other words. ... The test is the effect the article is fairly calculated to produce, the impression it would naturally engender, in the minds of the average persons among whom it is intended to circulate. The words must be [interpreted in the same manner other people are likely to understand them]." *Rutt, supra* at 172-73, 484 A.2d at 76-77. (citations omitted)

The average person reading the circulars about the school board members would naturally understand the statements to be part of a political campaign. An example of an alleged defamatory statement found in exhibit A states: "it's time for the taxpayers of South Allegheny to take back our schools from the Galiyas and Ashoffs of this world and restore the district to fiscal responsibility. Until the arrival of the Galiyas/Ashoff team, and the incestuous relationship that developed between the teachers' union and certain school board members and their spouses, this school district was proud of its history and the hard work, dedication and responsible

leadership of many, many school directors over 25 years of service."

Plaintiffs contend the above statement conveys that plaintiff Ashoff and plaintiff Galiyas engaged in impermissible and immoral sexual relationships constituting incest which is false and untrue. Such an incredible appraisal of the supposed meaning conveyed by exhibit A is reflective of the entirety of the plaintiff's complaint. It is obvious that a statement referring to an incestuous relationship in a political context is not to be taken literally. For example, the maxim "politics makes for strange bedfellows" is commonplace and is not interpreted to be sexual in meaning.

To the extent that exhibit A and B can be interpreted as anything other than a dissemination of factual materials, it should also be noted that opinions based on disclosed facts are not actionable. *Dougherty v. Boyertown Times,* 377 Pa. Super 462, 476-80, 547 A.2d 778, 785-86 (1988). For example, it is stated that plaintiffs "devastated" the school district, and this is an expression of opinion explicitly supported by facts disclosed in exhibit A. Nowhere in exhibits A and B are there any opinions based on undisclosed defamatory facts. All facts on which any opinions are based are clearly and "robustly" set forth. A statement in the form of an opinion is actionable only if it implies the existence of undisclosed defamatory facts as the basis of the opinion. Restatement (Second) of Torts §566 (1977), adopted in *Braig v. Field Communications,* 310 Pa. Super 569, 456 A.2d 1366 (1983).

Plaintiffs complain that the portion of exhibit A dealing with a campaign contribution to plaintiffs' 1989 campaign by the Pennsylvania State Education Association conveyed that plaintiffs had received illegal contributions. There is no support for this interpretation. There is nothing suggesting that the contribution was in any way illegal. All that is rhetorically questioned

is whether there is a conflict of interest when school directors accept money from the teachers' union. The type of questioning of elected officials is the type regularly accepted and encouraged in American political life. To classify any of the statements made by the defendants as defamatory would create an impermissible restriction of free speech and political debate.

In Counts 4, 5 and 6, the defendants are accused of invasion of privacy (specifically, false light) of the individual plaintiffs, each a separate count. In *Neish v. Beaver Newspapers Inc.,* 398 Pa. Super. 588, 598, 581 A.2d 619, 624-25 (1990) the court held in dismissing a "false light" claim that a borough solicitor's stature in the community as a public figure resulted in a relinquishment of insulation from scrutiny of his public affairs. The *Neish* court, citing *Larsen v. Philadelphia Newspapers Inc.,* 375 Pa. Super. 66, 72, 543 A.2d 1181, 1185 (1988), stated that the Superior Court has adopted the definition of the tort of invasion of privacy promulgated by the Restatement (Second) of Torts §652 B-E. Under section 652 E of the Restatement (Second) of Torts, false light is defined as follows:

"One who gives publicity to a matter concerning another that places the other before the public in a false light is subject to liability to the other for invasion of his privacy, if (a) the false light in which the other was placed would be highly offensive to a reasonable person, and (b) the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed." *Neish, supra* at 598, 581 A.2d at 624.

The *Neish* opinion obviates that no cause of action exists for invasion of privacy where, as here, all three plaintiffs, by their political candidacy, relinquished insulation from scrutiny of their public affairs. There logically can be no "invasion of privacy" when the public affairs of a public figure are under scrutiny.

In Count 7, intentional interference with prospective and/or actual business relationships is alleged. This cause of action consists of the following four elements: "(1) the existence of a contractual, or prospective contractual relation between the complainant and a third party; (2) purposeful action on the part of the defendant, specifically intended to harm the existing relation, or to prevent a prospective relation from occurring; (3) the absence of privilege or justification on the part of the defendant; and (4) the occasioning of actual legal damage as a result of the defendant's conduct." *Pelagatti v. Cohen,* 370 Pa. Super. 422, 434, 536 A.2d 1337, 1343 (1987).

Plaintiff Ashoff states that the alleged defamatory statements caused her to suffer "mental and physical disability thus forcing her to take a medical leave of absence from work." The plaintiff attempts to establish a separate cause of action out of an alleged *effect* of the alleged defamation. The claimed "physical and mental disability" is merely another item of claimed damage from the alleged defamation. Accordingly, Count 7 is insufficient to plead a cause of action.

Count 8 alleges injurious falsehood. No such cause of action exists under Pennsylvania law. However, the tort of injurious falsehood is akin to the tort of commercial disparagement. To recover for the tort of disparagement, a plaintiff must prove a direct pecuniary loss as a result of the disparagement. *Menefee v. Columbia Broadcasting System Inc.,* 458 Pa. 46, 329 A.2d 216 (1974). Plaintiff Ashoff makes a vague reference to economic interest, but does not allege that any particular property of Ashoff's has lost value. Therefore, plaintiff has failed to state a cause of action for injurious falsehood. The claims set forth in this count are properly encompassed under defamation.

Count 9 alleges civil conspiracy yet fails to set forth any supporting facts which would indicate conspiratory

conduct. In the case of *Petula v. Mellody,* 138 Pa. Commw. 411, 588 A.2d 103 (1991), the civil conspiracy allegation was dismissed because the plaintiff failed to demonstrate any conduct such as meetings, conferences, telephone calls, signature on writings or any other fact which would evidence a conspiracy. Similarly, plaintiff's complaint does not meet the requirements of the *Petula* case and fails to establish a cause of action.

In Counts 10 and 11, it is alleged that the defendants committed slander by making oral statements to local residents concerning plaintiffs Ashoff and Galiyas in Count 10 and plaintiff Muscante in Count 11. Specifically, Count 10 alleges that the defendants said that these directors were "bankrupting the district" and "caused the deficit." As noted earlier in this opinion, such statements, if made, do not amount to slander in the context of a political campaign. Certainly, they do not meet the requirements of slander per se as alleged by the plaintiffs. As to Count 11, the allegations of slander are a repeat of allegations made in earlier counts. These allegations have been addressed and determined by this court not to be actionable.

In Counts 12, 13 and 14, it is alleged that the defendants intentionally inflicted emotional distress upon Ashoff, Galiyas and Muscante, respectively, each a separate count. Recovery for intentional infliction of emotional distress will be allowed where there is conduct "so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency and to be regarded as atrocious and utterly intolerable in a civilized society." *Gordon v. Lancaster Osteopathic Hospital Association,* 340 Pa. Super. 253, 266, 489 A.2d 1364, 1371 (1985). Additionally, in order to recover on a claim of intentional infliction of emotional

distress, plaintiff must prove existence of alleged emotional distress by competent medical evidence. *Kazatsky v. King David Memorial Park,* 515 Pa. 183, 527 A.2d 988 (1987). Plaintiffs fail to demonstrate how the campaign literature could possibly be classified as intolerable and atrocious statements, nor do they provide any medical evidence to qualify their claim.

In conclusion, the plaintiffs allege that these causes of action arose during the 1993 political campaign for the directorships of the South Allegheny School Board when the defendants as candidates for directorships committed various torts by publishing untrue, malicious and damaging statements about the plaintiffs in furtherance of their political campaigns. After a review of the complaint and attached exhibits, it is clear that the plaintiffs have failed to state a cause of action. The plaintiffs were the incumbent directors and the defendants were challenging them by using political tactics that although they might be characterized as aggressive, do not rise to the level of actionable. For the foregoing reasons, the preliminary objections were properly sustained, and the complaint dismissed.