## Rivera v. YMCA of Bethlehem

C.P. of Northampton County, No. C-48-CV-2013-1268

*Joshua D. Fulmer*, for plaintiff.
*Edward J. Easterly*, for defendants.

BELTRAMI, *J.*, October 29, 2013—

## ORDER OF COURT

And now, this 29th day of October, 2013, "defendants, YMCA-Bethlehem, Chris Brown, and Jenna Spirk Camasta's[,] preliminary objections" to plaintiff's amended complaint are hereby overruled. Defendants shall file an answer to plaintiff's amended complaint within twenty (20) days.

## STATEMENT OF REASONS

On February 5, 2013, plaintiff filed a complaint, in which she asserted claims of defamation and false-light invasion of privacy against defendants. On March 11, 2013, defendants filed preliminary objections to plaintiff's complaint, which were sustained by this court on May 28, 2013. On June 17, 2013, plaintiff filed an amended complaint.

In her amended complaint, plaintiff avers the following facts. Plaintiff was employed by defendant YMCA-Bethlehem ("YMCA") as a custodian. (Am. Compl. ¶8.) During plaintiff's employment, defendant Chris Brown was the acting branch director and defendant Jenna Spirk Camasta was the child care coordinator for the YMCA. (*Id.* ¶¶4, 6.) On August 15, 2012, Brown called plaintiff at her home and informed her that she was being fired from her position "because she was seen on camera stealing a wallet from the 'teen room' at the" YMCA. (*Id.* ¶13.) Plaintiff "denied that she had stolen anything." (*Id.* ¶14.)

Brown made a report to the City of Bethlehem Police Department about the incident, "falsely accusing" plaintiff of theft. (*Id.* ¶15.) The wallet in question was later discovered in the parking lot of the YMCA. (*Id.* ¶20.) When it was found, nothing was missing from the wallet. (*Id.*) Prior to the incident, plaintiff never walked through the lot where the wallet was found because she took public transportation to and from work, and the bus stop is located in the opposite direction from the lot. (*Id.* ¶21.) "The videotape in question does not show [plaintiff] stealing a wallet or any other item from the" YMCA. (*Id.* ¶22.)

Following an investigation by police that forced plaintiff

to hire counsel, plaintiff was not charged criminally regarding the incident. (*Id.* ¶23.) During this investigation, Brown and Camasta repeated the false theft allegations to others at the YMCA, including plaintiff's co-workers, such that the false allegations became common knowledge among all of the employees of the YMCA. (*Id.* ¶¶16-19.) Plaintiff's amended complaint also specifically identifies Kirby White, the alleged victim of the theft, as well as YMCA employees "Gaye (last name unknown)" and "Jim (last name unknown)" as people Brown, Camasta, and another YMCA employee, Robert Fritz, spoke to about the false allegations against plaintiff. (*Id.* ¶¶16-19.)

In counts I, II, and III of the amended complaint, plaintiff seeks damages for defamation against YMCA, Brown, and Camasta, respectively. In counts IV, V, and VI of the amended complaint, plaintiff alleges false-light invasion of privacy against YMCA, Brown, and Camasta, respectively.

On July 9, 2013, defendants filed the instant preliminary objections to plaintiff's amended complaint, in which they assert demurrers to all of the counts contained in the amended complaint. Any party may file preliminary objections alleging "legal insufficiency of a pleading (demurrer)." Pa.R.C.P. No. 1028(a)(4). To sustain a demurrer, a court must be certain that the law will not permit recovery. *Pa. Builders Ass'n v. Dep't of Labor and Indus.*, 4 A.3d 215, 220 (Pa. Commw. 2010). "[A] court must overrule the objection if the complaint pleads sufficient facts which, if believed, would entitle the petitioner to relief under any theory of law." *Wilkinsburg Police Officers Ass'n By and Through Harder v. Commonwealth*, 636 A.2d 134, 137 (Pa. 1993). Any doubt as to whether the demurrer should be sustained must be

resolved in favor of overruling it. *Soto v. Nabisco, Inc.*, 32 A.3d 787, 790 (Pa. Super. 2011). In ruling on a demurrer, a trial court must accept all material factual averments in a complaint as true, as well as all inferences reasonably deducible therefrom. *O'Donnell v. Hovnanian Enters., Inc.*, 29 A.3d 1183, 1186 (Pa. Super. 2011). "Preliminary objections in the nature of a demurrer require the court to resolve the issues solely on the basis of the pleadings; no testimony or other evidence outside of the complaint may be considered to dispose of the legal issues presented by the demurrer." *Hess v. Fox Rothschild, LLP*, 925 A.2d 798, 805 (Pa. Super. 2007) (quoting *Cardenas v. Schober*, 783 A.2d 317, 321-22 (Pa. Super. 2001)).

In the first section of their preliminary objections, defendants assert that plaintiff has not set forth sufficient facts to state a cause of action for defamation against any of them. The elements of defamation are as follows:

(a) Burden of plaintiff. — In an action for defamation, the plaintiff has the burden of proving, when the issue is properly raised:

(1) The defamatory character of the communication.

(2) Its publication by the defendant.

(3) Its application to the plaintiff.

(4) The understanding by the recipient of its defamatory meaning.

(5) The understanding by the recipient of it as intended to be applied to the plaintiff.

(6) Special harm resulting to the plaintiff from its publication.

(7) Abuse of a conditionally privileged occasion.

42 Pa.C.S.A. §8343(a)(1)-(7).

The first element of defamation is "[t]he defamatory character of the communication." *Id.* §8343(a)(1).

A communication is considered defamatory if it tends to harm the reputation of another so as to lower him in the estimation of the community or to deter third persons from associating or dealing with him. *MacElree.* "It is not enough that the victim of the [statements] . . . be embarrassed or annoyed, he must have suffered the kind of harm which has grievously fractured his standing in the community of respectable society." *Tucker v. Phila. Daily News,* 577 Pa. 598, 616, 848 A.2d 113, 124 (2004).

Further, statements alleged to be defamatory must be viewed in context. *Baker v. Lafayette Coll.,* 516 Pa. 291, 532 A.2d 399 (1987). . . .

Alleged claims for defamation should not be dismissed on the basis of a preliminary objection in the nature of a demurrer unless it is clear the communication is incapable of defamatory meaning. *Petula v. Mellody,* 138 Pa. Cmwlth. 411, 588 A.2d 103 (1991) (*Petula I*). Whether a communication is capable of a defamatory meaning is a question for the court in the first instance. *Id.*; *Rybas.* However, if the court concludes the communication could be construed as defamatory, the final determination is for the jury. *Petula I.* Under Pennsylvania law, courts act as gatekeepers to determine whether statements are incapable of defamatory meaning in deciding whether any basis exists to proceed to trial. *Mzamane.*

*Balletta v. Spadoni*, 47 A.3d 183, 197 (Pa. Commw. 2012).

In this case, defendants' statements are capable of a defamatory meaning. Plaintiff avers, and the court must accept as true, that the allegations of theft and resulting firing from her position harmed plaintiff's reputation and affected her standing in the community. Furthermore, the fact that plaintiff was fired means that the type of harm she suffered was more than mere embarrassment.

In their brief, defendants argue that Camasta's statement to her co-worker, Gaye, constitutes an opinion. "Generally, a statement that is merely an expression of opinion is not defamatory." *Id.* In paragraph eighteen of her amended complaint, plaintiff avers that Camasta told Gaye "specific details regarding the [videotape] and specifically stated that she believed . . . Plaintiff stole [the] wallet." (Am. Compl. ¶18.) While it is reasonable to assume that Camasta's actual belief that plaintiff stole the wallet is an opinion, the specific details regarding the videotape are not. Thus, the court cannot conclude, at this stage of the proceeding, that this communication constitutes a non-actionable opinion.

The second element of defamation is "publication by the defendant." 42 Pa.C.S.A. §8343(a)(3). Publication occurs when a defamatory statement is either "published or communicated to a third person." *Elia v. Erie Ins. Exch.*, 634 A.2d 657, 660 (Pa. Super. 1993). Defendants argue that plaintiff has failed to establish this element because she has not specifically identified, by name, those to whom the alleged defamatory statements were made. However, a plaintiff is not required to identify the recipients of a defamatory communication by name. *See Petula*, 588 A.2d at 107. In *Petula*, the plaintiff averred that

the defamatory statements were made to "representatives and board members' of certain named school districts." *Id.* There, the court stated that "[w]hile it would have been preferable to identify the third parties by name, the identification of the third parties here, in our opinion, is not so vague so as to warrant sustaining a demurrer." *Id.* Likewise, in *Suppan v. Kratzer*, 660 A.2d 226, 229 (Pa. Commw. 1995), the Commonwealth Court concluded that the plaintiff had sufficiently identified the persons to whom the alleged defamatory statements were made where plaintiff simply identified them as "Northampton police officers."

In the instant case, plaintiff's identification of the third parties is not so vague as to warrant the sustaining of defendants' demurrers. In this regard, plaintiff avers that Brown and Camasta made false allegations about plaintiff to Kirby White and to "multiple staff members [of the YMCA], such that the allegations became common knowledge amongst all of the employees of" the YMCA. (Am. Compl. ¶¶16-17.) The amended complaint also claims that Camasta made false statements to a fellow "employee, Gaye (last name unknown)." (*Id.* ¶18.) Finally, the complaint alleges that YMCA employee Robert Fritz made defamatory statements to "a fellow maintenance employee, Jim (last name unknown)." (*Id.* ¶19.) Reviewing these paragraphs of plaintiff's amended complaint, it is clear that plaintiff has sufficiently pleaded the identity of the parties to whom the alleged defamatory statements were made.

Defendants raise no arguments concerning the third, fourth, fifth, and sixth elements of defamation. In any event, a review of plaintiff's amended complaint reveals that she has adequately pleaded those elements as to all

defendants.

The final element of a defamation claim is the "abuse of a conditionally privileged occasion." 42 Pa.C.S.A. §8343(a)(7). However, this element is only applicable where a defendant proves a conditional privilege, since the statute states that "[i]n an action for defamation, the plaintiff has the burden of proving, *when the issue is properly raised*[,] . . . [a]buse of a conditionally privileged occasion." *Id.* (emphasis added). The statute further indicates that the issue of abuse is only properly raised when the defendant meets the "burden of proving . . . [t]he privileged character of the occasion on which [the defamatory communication] was published." *See id.* §8343(b). In other words, the plaintiff is only required to prove abuse of a conditional privilege after the defendant has proven that a conditional privilege applies. *See Elia,* 634 A.2d at 661. Thus, plaintiff does not necessarily have to plead this element in a defamation complaint.

Nevertheless, in their preliminary objections, defendants argue that the statements made by Brown and Camasta to their co-workers and/or the victim were subject to a conditional privilege that was not abused. For the reasons stated above, conditional privilege is an affirmative defense. *See* 42 Pa.C.S.A. §8343(b); Pa.R.C.P. No. 1030(a). An affirmative defense must be raised in new matter and may not be raised by way of preliminary objections. *See* Pa.R.C.P. No. 1030(a); *Bocchicchio v. Gen. Pub. Utils. Corp.,* 689 A.2d 305, 307-08 (Pa. Super. 1997). This is because an affirmative defense "ignores what the adverse party has averred and adds new facts to the legal dispute on the theory that such new facts dispose of any claim or claims which the adverse party had asserted in his pleading." *Sechler v. Ensign-Bickford*

*Co.*, 469 A.2d 233, 235 (Pa. Super. 1983) (quoting 2 ANDERSON PENNSYLVANIA CIVIL PRACTICE §1030.12). Where a defendant improperly raises an affirmative defense by way of preliminary objections, the plaintiff must challenge the defect by filing preliminary objections to the defendant's preliminary objections, or the defect will be waived, and the court may consider the affirmative defense. *Richmond v. McHale*, 35 A.3d 779, 782 (Pa. Super. 2012). However, even where the court may consider an affirmative defense at the preliminary objection stage, it will only bar the claim if the affirmative defense is clear from the face of the pleadings. *Scavo v. Old Forge Borough*, 978 A.2d 1076, 1078 (Pa. Commw. 2009). Here, plaintiff did not file preliminary objections to defendants' preliminary objections. Therefore, the court may consider conditional privilege as a defense at this stage but may only sustain defendants' demurrers if it is clear from the face of plaintiff's amended complaint that conditional privilege bars plaintiff's claims.

"An occasion is conditionally privileged when the circumstances are such as to lead any one of several persons having a common interest in a particular subject matter correctly or reasonably to believe that facts exist which another sharing such common interest is entitled to know." *Miketic v. Baron*, 675 A.2d 324, 329 (Pa. Super. 1996) (quoting *Beckman v. Dunn*, 419 A.2d 583, 587 (1980)). "Thus, proper occasions giving rise to a conditional privilege exist when (1) some interest of the person who publishes defamatory matter is involved; (2) some interest of the person to whom the matter is published or some other third person is involved; or (3) a recognized interest of the public is involved." *Id.* (quoting *Beckman*, 419 A.2d at 588).

> Abuse of a conditional privilege is indicated when the publication is actuated by malice or negligence, is made for a purpose other than that for which the privilege is given, or to a person not reasonably believed to be necessary for the accomplishment of the purpose of the privilege, or includes defamatory matter not reasonably believed to be necessary for the accomplishment of the purpose.

*Id.*

In this case, Brown argues that his communication to co-workers is conditionally privileged, citing *Foster v. UPMC S. Side Hosp.*, 2 A.3d 655 (Pa. Super. 2010). In that case, the Superior Court held that an employer's workers' communication "with each other in connection with the discipline, including termination, of a fellow employee" is conditionally privileged. *Foster*, 2 A.3d at 664. However, the court clarified that "[t]he workers relaying the purportedly defamatory information *must be involved in the disciplinary matter at hand.*" *Id.*

In this case, even if a conditional privilege applies to Brown's communication to co-workers, it is not clear from the pleadings that he did not abuse that privilege. In her amended complaint, plaintiff avers that "[t]he videotape in question does not show [her] stealing a wallet or any other item." (Am. Compl. ¶22.) As noted above, at the time of the incident, Brown was the acting branch director of the YMCA. He is also the person who called plaintiff to tell her that she was being fired because the videotape showed her stealing White's wallet. Because Brown was the acting branch director, and given his stated basis for plaintiff's firing, it is reasonable to infer that he would not have fired plaintiff without viewing the videotape. Given plaintiff's averment that the videotape does not show her

stealing, it is not clear from the pleadings, therefore, that Brown did not act with malice or negligence in telling his co-workers otherwise.[1]

In light of the above discussion, the court need not reach Brown and Camasta's next argument, that their communication to the alleged victim was conditionally privileged, as it is not clear from plaintiff's amended complaint that their communication to their co-workers is not. In other words, plaintiff's amended complaint states a cause of action for defamation against Brown and Camasta without even considering their communication to White.[2] For all of the above reasons, although defendants improperly raise conditional privilege as a preliminary objection, and although this defect has been waived, the court is unable to determine, at this stage of the proceedings, that conditional privilege bars plaintiff's defamation claims against Brown and Camasta.

Defendants next assert that Brown's statements to the Bethlehem Police Department were subject to an absolute privilege. Even accepting that argument as true, for the reasons outlined above, plaintiff has sufficiently pleaded a cause of action for defamation against Brown based upon his communication to the staff members of the YMCA. Therefore, the court need not reach this issue in ruling on defendants' demurrer to count II of plaintiff's amended complaint.[3]

---

1. In this case, there is no indication from plaintiff's amended complaint that Camasta was involved in the firing of plaintiff. Thus, the conditional privilege does not apply to Camasta's communication to Gaye and other co-workers.

2. Defendants have not raised a preliminary objection that Brown and Camasta's statements to White are impertinent and should be stricken.

3. Defendants have not asserted a preliminary objection that Brown's statements to the police are impertinent and should be stricken.

Finally with regard to plaintiff's defamation claims, defendants argue that plaintiff has failed to state a cause of action based upon YMCA employee Robert Fritz's communication to fellow maintenance employee, Jim, because "truth is an absolute defense to a defamation claim." (Defs.' Br. at 13.) In paragraph nineteen of her amended complaint, plaintiff avers that Fritz told Jim "specific details of the investigation, including specifically that the plaintiff was fired over the phone and that her termination was due to the allegation that [she] stole Kirby White's wallet." (Am. Compl. ¶19.) Defendants argue that because plaintiff avers elsewhere in her amended complaint that she was fired over the phone because of the theft allegation, Fritz's communication was truthful. Thus, defendants argue, Fritz's communication cannot constitute defamation. While plaintiff avers that she was fired over the phone, she also pleads that she did not steal Kirby White's wallet. One can reasonably infer from paragraph nineteen of plaintiff's amended complaint that Fritz told or implied to Jim that plaintiff stole White's wallet. Therefore, it is not clear and free from all doubt, at this stage of the proceeding, that plaintiff cannot recover based upon Fritz's communication to Jim. Thus, defendants' argument is without merit.

Next, defendants argue that plaintiff has not set forth sufficient facts to state a cause of action for false-light invasion of privacy against any of them because plaintiff failed to plead facts that would satisfy the publicity element of the tort.

The tort of [false-light] invasion of privacy involves "'publicity that unreasonably places the other in a false light before the public.'" *Strickland v. University of Scranton*, 700 A.2d 979, 987 (Pa. Super. 1997) (quoting

*Curran v. Children's Serv. Ctr. of Wyoming County, Inc.*, 396 Pa. Super. 29, 578 A.2d 8, 12 (1990)). A cause of action for invasion of privacy will be found where a major misrepresentation of a person's character, history, activities or beliefs is made that could reasonably be expected to cause a reasonable man to take serious offense. *Id.* "The elements to be proven are publicity, given to private facts, which would be highly offensive to a reasonable person and which are not of legitimate concern to the public." *Id.*

*Rush v. Phila. Newspapers, Inc.*, 732 A.2d 648, 654 (Pa. Super. 1999).

The "publicity" element

differs from the "publication" which is required in connection with liability for defamation. "Publicity," as an element of the tort of invasion of privacy, "means that the matter is made public, by communicating it to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge." Restatement (Second) of Torts, §652D, comment a.

*Curran v. Children's Serv. Ctr. of Wyo. Cnty., Inc.*, 578 A.2d 8, 12 (Pa. Super. 1990). "Thus it is not an invasion of the right of privacy . . . to communicate a fact concerning the plaintiff's private life to a single person or even to a small group of persons." RESTATEMENT (SECOND) OF TORTS §652D, comment a (1977). Additionally, the statement which places another in a false light must be "publicized with knowledge or in reckless disregard of its falsity." *Larsen v. Phila. Newspapers, Inc.*, 543 A.2d 1181, 1188 (Pa. Super. 1988).

Defendants argue that plaintiff's amended complaint does not make reference to a communication "to the public at large that would satisfy the" publicity element. (Defs.'Br. at 14.) The precise number of individuals required to have heard a statement for publicity to have occurred in a claim of false-light invasion of privacy has not been definitively determined by our courts. In *Vogel v. W.T. Grant Co.*, 327 A.2d 133, 137 (Pa. 1974), our Supreme Court held that publicity to a group of four individuals was not sufficient to constitute publicity. On the other hand, the Superior Court has held that a group of seventeen individuals was "a large enough group that the matter must be regarded as substantially certain to become one of public knowledge." *Harris by Harris v. Easton Pub. Co.*, 483 A.2d 1377, 1385 (Pa. Super. 1984). Thus, a group of somewhere between five and seventeen individuals appears to be sufficient to satisfy the element of publicity.

In this case, plaintiff alleges that defendants publicized the theft allegations to the police, the victim, and multiple staff members of the YMCA, such that the allegations became common knowledge among all of the employees of the YMCA. While plaintiff specifically identified only three of the YMCA employees, the fact that the information became common knowledge among *all* of the employees is sufficient to constitute publicity to support the claims for false-light invasion of privacy because it logically follows from the amended complaint that more than those three named individuals are employed by the YMCA.[4] Further, a demurrer may only be sustained when it is certain that no recovery is possible. Accordingly, defendants' demurrers

---

4. Assuming that there is at least one other employee and adding White and the police, the group communicated to is greater than five people.

to counts IV, V, and VI of plaintiff's amended complaint are overruled.